[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On September 10, 1987, plaintiff and defendant entered into a lease whereby plaintiff would occupy premises owned by defendant located at 1359 Thomaston Avenue, Waterbury, Connecticut. Subsequently this lease was amended on January 15, 1991 and October 20, 1992. This lease expired on October 31, 1993 and plaintiff remained on said premises on a month-to-month tenancy until July 1994 when it vacated the premises. In accordance with Article 3.4 of the lease, plaintiff had deposited Two Thousand Five Hundred Dollars ($2,500) as a security deposit. Upon vacating the premises, plaintiff requested return of same. When defendant refused to pay, plaintiff brought an action in small claims for return of $2,000 which is the jurisdictional maximum recoverable in that session. Defendant moved to transfer from that session to the regular docket and filed a counterclaim alleging that plaintiff left the premises in a damaged condition in that wiring, circuit breakers, switches, covers and extension lighting fixtures required repair or replacement and that windows and doors were damaged and required repair. Further, defendant claimed that plaintiff damaged or spilled waste oil on the premises which will require extensive clean up and removal of fill.
When plaintiff moved into the leased premises, it installed CT Page 5971 duct work for heat from the furnace, placed partitions so as to build an office and did considerable electrical work at its own expense. During its tenancy, several windows were broken and not replaced. Further, the overhead doors suffered some slight damage at the hands of defendant's driver but were in workable condition at the time plaintiff vacated the premises. Although defendant claimed in its cross complaint that it would have to pay for oil left on the premises, no estimates are provided concerning same, so that any oil stain clean up costs are certainly in the realm of speculation.
First, I shall deal with claimed electrical repairs. Mr. Sheehan, President of plaintiff corporation testified that, although not a licensed electrician, he had performed extensive electrical work inside the premises at his own expense, including circuit breakers, conduits and lights, switches and plates. Upon leaving the premises, Sheehan testified that he had removed numerous circuit breakers but secured the premises so that no live wires were dangerously exposed. In accordance with 7.2 and 7.3 of the lease allowing tenants to make alterations and repairs but to leave same on the premises, the court allows for the replacement of circuit breakers $154 plus $50 labor and $150 to secure wires and junction box. Anthony Longo, an electrician estimated a total cost of $1,475 to perform electrical work to repair the electrical system installed by plaintiff. However no work was done and the premises are presently leased.
Section 7.7 of the lease provides that tenant is to replace all broken glass during the term of the lease. According to testimony of the glazer, he did not report the alleged damage to the windows but gave an estimate over the phone to defendant. Plaintiff admitted to two broken windows — 8" x 12" which could be repaired for $1.20 for the glass plus labor. Further, he stated that a 24" x 30" pane was broken by a tornado in 1989 and never replaced and that that glass would cost between $20 and $25 plus putty and about 15 minutes of labor to install. Therefore for the glass and repair, the court allows $30 for materials plus $50 labor for a total of $80. The damage to the doors appears to the court to be no more than average wear and tear. The court finds § 47a-21 not applicable to commercial property but finds that Article 3.4 of the lease provides for return of security deposit.
Therefore the court finds that plaintiff is to recover of defendant the amount of its security deposit of $2,500 less $434 CT Page 5972 due to defendant for repairs under the lease.
Judgment enters in favor of the plaintiff on the complaint in the amount of $2,066 and for the defendant on the counterclaim of $434.
Although the lease provides in Article 13.4 that the tenant "shall be responsible for all reasonable attorney's fees incurred by landlord in enforcing any provision of this lease," the court does not allow attorney fees to defendant since this action was commenced by the plaintiff in order to secure its security deposit.
However, § 52-251A of the Connecticut General Statutes provides that whenever a plaintiff prevails in a small claims matter which was transferred to the regular docket or motion of the defendant, the court may allow plaintiff's costs, together with a reasonable attorney's fee. Therefore, the court allows an attorney's fee of $500 to plaintiff plus costs.
KULAWIZ, J.